**KIRBY LUMBER CORPORATION,**
Appellant,

v.

**Webb LAIRD, D. D. Griffin and wife, Etta Griffin, Appellees.**

No. 15724.

United States Court of Appeals
Fifth Circuit.

April 12, 1956.

William G. Fox, Houston, Tex., Fountain, Cox & Gaines, Houston, Tex., for appellant.

John T. Lindsey, Port Arthur, Tex., for appellees.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

BROWN, Circuit Judge.

The question under Texas law is whether an adverse claim asserted on the basis of possession by a Tenant is broken by the Tenant's attornment to the rightful Owner when the Owner knows of the adverse claim, and the adverse-claimant-Landlord knows of the attornment.[1] By evidence vouched for and binding on Laird and that which we must accept under the jury's verdict in his favor, the situation is simple: Kirby owned the land. In 1932 Laird began possession of a tract, initially four, shortly expanded to approximately seventeen acres and fenced in and a home built on it by him. Griffin (Laird's brother-in-law) and his wife resided on the place, occupying this home as his Tenants, the rental being the care of Laird's minor daughter, cultivation of crops and the general care of the place during his extended absences.[2]

Their possession with the characteristics essential to support an adverse claim under the Texas 10-year Statute of Limitations[3] continued without interruption until 1938 when the Tenants exe-

---

1. To simplify discussion we use the following terms:

Owner: The person (here, Kirby) having rightful, true record, ownership and title.

Landlord: The person (here, Laird) attempting to perfect ownership by adverse claim through possession by a Tenant.

Tenant: The person (here, Griffins) in possession under an arrangement with Landlord.

2. The case was tried and the evidence would support title in Laird only on the theory of possession for the Landlord by the Tenant, e. g., see Laird's counsel's opening statement to the jury, " * * * that they [Griffins] have been the Tenants of G. W. Laird, and that Laird seeks to acquire ownership by virtue of the 10-year Statute of Limitation, through his Tenants * * *."

3. Article 5510, Revised Civil Statutes of Texas: "Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor

cuted a formal Tenancy Agreement acknowledging the ownership of Kirby. The Griffins informed Kirby's agent that they were on the place for Laird who was claiming the land, and within a few months told Laird what they had done. Neither Owner nor Landlord took any action. In 1947 the Griffins again executed a formal year-to-year lease, paid the first year's rent, informed Kirby's agents of Laird's claim and again advised Laird of their action which he warned them never to repeat. No action was taken by either until Kirby brought this suit in trespass to try title, Vernon's Texas Civil Statutes, Article 7364 et seq; cf. Texas Rules Civil Procedure 783–809, on January 6, 1954.

■ In our role as a vicarious Texas Appellate Court, Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 190 F.2d 191, unaided by authoritative Texas pronouncements, we must determine as best we can, and then apply, what we think the Texas Courts would do. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Williams v. Green Bay & W. R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311; West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139; Linkenhoger v. Owens, 5 Cir., 181 F.2d 97, 99; Cf. Cooper v. American Airlines, 2 Cir., 149 F.2d 355, 162 A.L.R. 318.

■ The nature of the required possession [4] is not altered when it is supplied through a Tenant. Dawson v. Tumlinson, 150 Tex. 451, 242 S.W.2d 191; 2 Texas Jurisprudence, Adverse Possession, § 41, page 78. The Tenant, therefore, is the means by which the open, hostile, notorious, continuous exclusive possession under a claim of right, Houston Oil Co. of Texas v. Jones, 109 Tex. 89, 198 S.W. 290; Houston Oil Co. of Texas v. Stepney, Tex.Civ.App., 187 S.W. 1078, error refused; 2 Texas Jurisprudence, Adverse Possession, § 64, page 123, is achieved. In the common figure, the Tenant flies the Landlord's flag.

■ Ordinarily, one in possession under a lease arrangement is not permitted to challenge the title of his Lessor nor may he take action detrimental to the Lessor's title by attornment to third parties, Carter v. Townsend, Tex.Civ.App., 139 S.W.2d 641, error dismissed, judgment correct; Fowler v. Simpson, 79 Tex. 611, 15 S.W. 682; 2 Texas Jurisprudence, Adverse Possession, §§ 75, 76, Landlord and Tenant, §§ 20, 22. But in limitation situations if the Tenant attorns to the Owner who lacks knowledge of the Landlord's claim, we think that the Texas Courts would hold that the possession by the Tenant then becomes that of the Owner. It is broken for the Landlord, Louisiana and Texas Lumber Company v. Alexander, Tex.Civ.App., 154 S. W. 233, 234 [5]; Powell Lumber Company

---

within ten years next after his cause of action shall have accrued, and not afterward. * * *"

4. Art. 5515, Rev.Civ.Stat. of Texas, " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." See Art. 5514, Rev.Civ.Stat. of Texas; Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 926; 2 Texas Jurisprudence, Adverse Possession, § 39, page 75, § 60, pages 115–116.

2 Texas Jurisprudence, Adverse Possession, § 64, page 121: "The fundamental basis upon which rests the Limitation Statute, is that one who asserts title by limitation must have taken possession of the property with the inten-

tion to assert a claim to the land and that his possession must be such as will bring notice to the title holder of his claim." [Quoting from Thompson v. Richardson, Tex.Com.App., 221 S.W. 952.]

5. "The well-settled general rule is that the continuity of possession of an adverse claimant is not broken by the attornment of his tenant to another, without his knowledge or consent. * * * We are not prepared to say that this rule should apply when the attornment is to the owner of the property, and is obtained by him without any notice that the person in possession, who makes the attornment, is holding under one claiming adversely to him.

"In order to perfect his title by limitation, the adverse claimant of land must

v. Nobles, Tex.Civ.App., 44 S.W.2d 774; see Western Union Beef Co. v. Thurman, 5 Cir., 70 F. 960; he has struck the Landlord's ensign and hoisted the colors of the Owner. This has much reasonableness since the Owner is not obliged to evict one who acknowledges his ownership and is apparently claiming for no one else.

■ If, however, the Owner knows of the Landlord's claim, the Tenant's attornment does not break possession on behalf of the Landlord ignorant of his Tenant's action, Louisiana and Texas Lumber Company v. Alexander, supra; Powell Lumber Company v. Nobles,[6] supra [44 S.W.2d 777]. There, between the two, the Owner knows, the Landlord does not. The Owner is aware of the adverse claim and the Tenant's renunciation of his undivided loyalty to the Landlord. The Landlord, on the other hand, knows nothing save that his agent presumably continues to fly high the Landlord's banner. It is reasonable here that the Owner must take action to oust the adverse claimant or at least run the risk of being able to establish that the opportunity

and necessity was open equally to the Landlord.

But coming then to our facts, both Owner and Landlord know. The Owner, as in the second situation, knows of the adverse claim, but there is one marked difference between this and the two others: here, both Owner and Landlord know that the Tenant has renounced his single tenancy. He now asserts for the Landlord the claim of right against everyone *except* the Owner. In this impasse upon whom should the *obligation* rest to take action? Who should gain for want of action? Both on the general equities and the availability of effective means, we approve the rule forecast, Linkenhoger v. Owens, supra, by these Texas precedents which puts the necessity for action on the Landlord, Coyle v. Franklin, 5 Cir., 54 F. 644; Custer v. Hall, 71 W.Va. 119, 76 S.E. 183, 187; Van Deventer v. Lott, C.C.E.D.N.Y., 172 F. 574, 589, 590, affirmed 2 Cir., 180 F. 378; 4 Tiffany Real Property, 2d Edition, Section 1168; 38 A.L.R.2d 826–835; cf. Kimble v. Willey, 8 Cir., 198 F.2d 812, reversed on rehearing, 8 Cir., 204 F.2d 238.

give continuous notice of his claim by a visible occupancy and appropriation of the land for the time prescribed by the statute. He must in this way keep his flag continuously flying; and while he may do this by tenant, if such tenant lowers the flag by attorning to the owner, who acts in good faith and without notice that the person in possession, who attorns to him, is the tenant of an adverse claimant, it may be that such attornment would break the continuity of the adverse claimant's possession. It would seem that in such case the owner has done all that could be required of him to protect his possession, and that the adverse claimant, who trusted his tenant to assert his claim for him, should suffer the consequences of his agent's infidelity."

6. "In Louisiana & Texas Lumber Company v. Alexander * * * Judge Pleasants said that the well-settled general rule is that the continuity of possession of an adverse claimant is not broken by the attornment of his tenant to another without his knowledge or consent. Though in that case Judge Pleasants sug-

gested that this rule might not control when the attornment was made to the true owner, yet he gave the rule controlling effect because in that case the evidence raised the issue that the true owner knew that the tenant was in possession for the limitation claimant. That issue was raised in this case * * *."

2 Texas Jurisprudence, Adverse Possession, § 41, page 79, and such cited cases as Combs v. Stringer, Tex.Civ.App., 142 S.W. 668, reversed on other grounds, Combes v. Stringer, 106 Tex. 427, 167 S.W. 217; Temple Lumber Co. v. Pulliam, Tex.Civ.App., 272 S.W. 587, reversed on other grounds, Tex.Com.App., 285 S.W. 609; Lutcher & Moore Lumber Co. v. Vargo, Tex.Civ.App., 76 S.W.2d 572, error dismissed; Temple Lumber Co. v. McFarland, Tex.Civ.App., 264 S.W. 298, error refused; Hulett v. Platt, 49 Tex. Civ.App. 377, 109 S.W. 207, error refused; Cobb v. Robertson, 99 Tex. 138, 86 S.W. 746, on rehearing 99 Tex. 148, 87 S.W. 1148; Saxton v. Corbett, Tex.Civ. App., 122 S.W. 75, error refused 104 Tex. 713, on analysis are consistent with the Alexander and Nobles cases.

816

■ In this equilibrium of knowledge, the law should range itself on the side of protecting, not undermining, ownership. The Landlord is yet a trespasser. His wrongful possession becomes rightful only through continued adverse claim made for him by the Tenant. Knowing that the Tenant no longer proclaims for him against all, it is both up and open to him to remove this duplicitous agent, and when he fails reasonably to take action, Coyle v. Franklin, 5 Cir., supra, his adverse possession is broken.

■ Laird, with positive knowledge that his Tenant no longer asserted for him alone, nevertheless did nothing from 1938 on. Nothing done by the Griffins between 1938 and 1947 indicated to Kirby that they no longer held for it. The new lease of 1947 made it doubly sure as corroboration of nine years of passive acquiescence. At no time, then, since 1938 has there ever been ten years continuous adverse possession for Laird.

The evidence, with all indulgences in Laird's favor, did not, under Texas law, warrant the finding of a ten-year limitation. In entering judgment for Laird, the District Court mistakenly construed and applied Texas law. This was, of course, a plain error of law in no way placing the Judge in the position of weighing, reexamining or rejecting controverted facts which had been resolved by the jury verdict. Since the evidence did not under any interpretation permit a judgment for Laird, the complaint in the motion for new trial that the evidence was insufficient to support the verdict and judgment, and that verdict and judgment were contrary to the overwhelming weight of the evidence, obviously comprehended the charge that there was no evidence. Texas law, properly construed, applied to all of the facts interpreted most favorably to Laird required judgment for Kirby, not Laird, and, under such circumstances, the motion for new trial should have been sustained, Commercial Credit Corp. v. Pepper, 5 Cir., 187 F.2d 71; Whiteman v. Pitrie, 5 Cir., 220 F.2d 914, 918, 919; Miller v. Tennessee Gas Transmission Co., 5 Cir., 220 F.2d 434; Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498, 500; Moore's Federal Practice, § 59.08(6), page 3827, notes 29, 30, § 59.08(5), page 3816, and the judgment must therefore be reversed and remanded to the District Court for a new trial; see Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879; Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636; Moore's Federal Practice, § 50.07, pages 2325, 2326; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177; Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971. Cf. Johnson v. New York, New Haven & H. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.

Reversed and remanded.